IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY ERICSSON MOBILE COMMUNICATIONS AB,<br><br>    Petitioner<br><br>  v.<br><br>DELTA ELECTRONICS (THAILAND) PUBLIC COMPANY LIMITED,<br><br>    Respondent<br>                                            / | No. C-09-1326 MMC<br><br>**ORDER CONDITIONALLY GRANTING PETITIONER'S APPLICATION FOR WRIT OF ATTACHMENT; VACATING APRIL 17, 2009 HEARING** |

      Before the Court is petitioner Sony Ericsson Mobile Communications AB's ("Sony Ericsson") application for a writ of attachment, filed March 26, 2009, by which Sony Ericsson seeks to secure $4,287,555.93 in funds held for the benefit of respondent Delta Electronics (Thailand) Public Company Limited ("Delta"). On March 31, 2009, Delta filed opposition thereto, to which Sony Ericsson, in a "Supplemental Memorandum" filed April 1, 2009, replied; on April 2, 2009, Delta filed a "Reply to Petitioner's Supplemental Response." Having read and considered the papers filed in support of and in opposition to the application,[1] the Court deems the matter suitable for decision on the parties' respective

---

[1] The Court has also considered the argument contained in Sony Ericsson's "Emergency Application for Temporary Restraining Order," Delta's opposition thereto, and Sony Ericsson's reply to Delta's opposition, to the extent such filings include argument pertaining to the application for a writ of attachment.

submissions, VACATES the hearing scheduled for April 17, 2009, and rules as follows.

**BACKGROUND**

Sony Ericsson and Delta are parties to an agreement titled "Price Agreement." (See Steen Affirmation Ex. 1.)  After a dispute arose thereunder, Sony Ericsson, on February 15, 2006, filed a Request for Arbitration with the International Court of Arbitration of the International Chamber of Commerce.  (See Petition ¶¶ 9-10.)[2]  Delta participated in the arbitration proceeding, and argued that, inter alia, the "arbitration should never have been instituted by Sony Ericsson because there is no arbitration agreement made between Sony Ericsson and Delta upon which the arbitrators may rely when trying claims brought by Sony Ericsson," and requested the tribunal conducting the arbitration to "dismiss Sony Ericsson's claims as being without jurisdiction." (See Krootdaecha Affirmation Ex. 3, first unnumbered page.)  Alternatively, Delta argued it had "refute[d]" Sony Ericsson's claims on their merits. (See, e.g., id. Ex. 1 ¶ 1.1, 2.5.)

On June 30, 2008, a tribunal having its seat in Stockholm, Sweden, and consisting of three arbitrators, issued an Award.  (See Steen Affirmation Ex. 2.)  In its Award, the tribunal found the parties had formed an arbitration agreement (see id. Ex. 2 ¶ 4.3.1) and that some but not all of Sony Ericsson's claims against Delta fell within the scope of the arbitration agreement (see id. Ex. 2 ¶¶ 4.3.2 - 4.3.3).  Further, on the merits of the claims the tribunal found were properly before it, the tribunal ordered Delta to pay Sony Ericsson "damages in the sum of EUR 1 858 508,00" and interest until "the date of full payment." (See id. Ex. 2 ¶ 6.)

**DISCUSSION**

By the instant action, Sony Ericsson seeks to confirm the Award, pursuant to 9 U.S.C. § 207, which statute is applicable to arbitration awards issued pursuant to the United States Convention on the Recognition and Enforcement of Foreign Arbitral Awards

---

[2]Neither party has submitted a copy of said Request.

2

("the Convention"), which governs foreign arbitral awards.  See 9 U.S.C. §§ 201, 207.[3]  By the instant application, Sony Ericsson seeks issuance of a prejudgment attachment on certain of Delta's property, specifically, the sum of $4,287,555.93, which funds Sony Ericsson asserts are on deposit with a branch of Citibank N.A. located in Milpitas, California.

**A.  Dismissal or Stay Based on Pendency of Other Petitions to Confirm**

By order filed April 3, 2009, the Court directed the parties to address whether it should dismiss or stay the instant petition under the "first to file" rule and/or under the doctrine of international comity, in light of Sony Ericsson's having earlier filed in, respectively, the Southern District of New York and the Intellectual Property and International Trade Court, Bangkok, Thailand, petitions seeking confirmation of the same Award at issue herein.  The parties subsequently addressed that issue in their respective filings in support of and in opposition to Sony Ericsson's application for a temporary restraining order.  Having considered the parties' respective submissions on said issue, as well as subsequent procedural developments, the Court, for the reasons set forth below, declines to dismiss or stay the instant action on either of the above-referenced grounds.

First, a dismissal or stay in light of the petition previously filed in the Southern District of New York is not appropriate.  By order filed April 8, 2009, the Southern District of New York dismissed the petition then pending before it, after concluding Delta was not subject to personal jurisdiction in that district.  As a result of said order, there is only one petition to confirm the Award pending in a federal district court.  Under such circumstances, the Court finds dismissal of the instant petition would not advance the interests of "efficiency and judicial economy."  See Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997) (holding, under "first to file rule," when cases involving "same parties and issues have been filed in two different districts," second court has discretion to dismiss or stay second case "in the interest of efficiency and judicial economy").

---

[3]The Court has set a briefing schedule on the issue of whether the Award should be confirmed, and has scheduled a June 5, 2009 hearing to address that issue.

Second, a dismissal or stay in light of the petition previously filed, and still pending, in Thailand is not appropriate. "Exceptional circumstances" must exist before a district court may dismiss or stay an action in light of parallel proceedings in another country, see Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines, 925 F.2d 1193, 1195 (9th Cir. 1991), and Delta has failed to establish the presence of any exceptional circumstances. Although Delta points out that an evidentiary hearing has been scheduled in the Thailand proceeding, the "mere fact that [the] parallel proceedings may be further along does not make a case 'exceptional' for the purpose of involving the [ ] exception to the general rule that federal courts must exercise their jurisdiction concurrently with courts of other jurisdictions." See id. Moreover, retaining jurisdiction over the instant action is consistent with the Convention, which allows for the bringing of "concurrent enforcement" actions, including "simultaneous enforcement actions." See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 367-68 (5th Cir. 2003) (holding "multiple judicial proceedings on the same legal issues are characteristic of the confirmation and enforcement of international arbitration awards under the Convention"; noting prevailing claimant, after securing enforcement order in Hong Kong, had initiated enforcement proceedings in two other countries).

Accordingly, the Court declines to dismiss or stay the instant action based on the previously-filed petition in the Southern District of New York or the previously-filed petition in Thailand.

**B. Application for Writ of Attachment**

"[A]ttachment and comparable provisional remedies for enforcement of a foreign arbitral award, if available in the enforcing state, are compatible with the Convention." See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1127 (9th Cir. 2002). Here, the proposed "enforcing state" is the United States. See id. at 1120 (holding United States is a "Convention state" with power to "enforce" awards issued under Convention). Under federal law, a petitioner may seek any remedy that, under the law of the state where a district court is located, provides for the seizure of property to secure

4

satisfaction of a potential judgment. See Fed. R. Civ. P. 64(a).

Under California law, a court shall issue a "right to attach order" if the court makes the following four findings:

(1) The claim upon which the attachment is based is one upon which an attachment may be issued.

(2) The plaintiff has established the probable validity of the claim upon which the attachment is based.

(3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.

(4) The amount to be secured by the attachment is greater than zero.

See Cal. Code Civ. Proc. § 484.090 (a). Additionally, if the above-referenced findings are made, and if "the defendant [ ] fail[s] to prove that all of the property sought to be attached is exempt from attachment, [the court] shall order a writ of attachment to be issued upon the filing of an undertaking." See Cal. Code Civ. Proc. § 484.090(b).

**1. Issuance of Right to Attach Order**

For the reasons stated below, the Court finds that issuance of a right to attach order is appropriate pursuant to § 484.090(a).

### a. Claim Upon Which Attachment May Be Issued

"An attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees." See Cal. Code Civ. Proc. § 483.010(a).

Here, as noted, the Award resolved claims brought by Sony Ericsson on the Price Agreement, an express contract between Sony Ericsson and Delta. Further, the principal amount awarded by the tribunal exceeds the sum of $500. Thus, the instant claim is one upon which an attachment may be issued.

//
//

5

### b. Probable Validity of Claim

"A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." See Cal. Code Civ. Proc. § 481.190.

When a party seeks confirmation of an award under the Convention, the district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." See 9 U.S.C. § 207. One defense to a petition to enforce an award under the Convention is that the arbitral tribunal did not have jurisdiction because an agreement to arbitrate did not exist. See Sarhank Group v. Oracle Corp., 404 F.3d 657, 662 (2nd Cir. 2005). The respondent has the burden to establish that the tribunal did not have jurisdiction over the dispute. See Ministry of Defense v. Gould, Inc., 969 F.2d 764, 770 (9th Cir. 1992).

Here, Delta argues the Court should not confirm the award because, according to Delta, Sony Ericsson and Delta did not have an agreement to arbitrate claims arising under the Price Agreement.

The first page of the Price Agreement, in a section titled "General Conditions," includes the following language:

> The general terms and conditions of
>   Agreement (id no and/or date): _____ or
>   ○ Sony Ericsson General Purchasing Conditions
> shall apply to this price agreement.

(See Steen Affirmation Ex. 1, first page.)[4]

The "Sony Ericsson General Purchasing Conditions" ("GPC"), in turn, includes the following choice of law and arbitration provisions:

> Any disputes concerning the interpretation or application of these General Purchasing Conditions for Sony Ericsson shall be governed in accordance

---

[4] According to Delta, in the Price Agreement, the "bullet point" to the left of the phrase "Sony Ericsson General Purchasing Conditions" is "filled in." (See Delta's Opp., filed April 6, 2009, at 13.)

6

> with Swedish law.
>
> All disputes differences or questions between the parties with respect to any matter arising out of or relating to these General Purchasing Conditions for Sony Ericsson shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce (ICC) in Stockholm, Sweden by three (3) arbitrators appointed in accordance with the said Rules. The arbitration procedure shall take place in the English Language.

(See Steen Affirmation Ex. 1, sixth page.)

The tribunal, applying Swedish law, found Delta was "bound by the arbitration clause in the [GPC] by way of reference to it in the Price Agreement." (See id. Ex. 2 at 19-21.) In opposition to the instant application, Delta argues that this Court should consider the matter in the first instance, and, further that the Court should find the parties' reference to the GPC in the Price Agreement was insufficient to incorporate by reference therein the terms and conditions of the GPC.

"[T]he question, 'who has the primary power to decide arbitrability,' turns upon what the parties agreed about that matter." First Options v. Kaplan, 514 U.S. 938, 943 (1995). If the parties have "clearly agree[d] to submit the question of arbitrability to arbitration," the district court "must defer to an arbitrator's arbitrability decision." See id. at 943-47. If the parties have not "clearly agree[d]" to such submission, however, the issue of arbitrability is "subject to independent review" by the district court. See id. at 947. Here, even assuming, arguendo, Delta did not clearly agree to submit the question of arbitrability to the tribunal,[5] the Court finds Sony Ericsson has made a sufficient showing of probable success on that question.

In this Court, the only argument made by Delta pertaining to arbitrability is whether the parties incorporated by reference into the Price Agreement the arbitration provision

---

[5]In one of the filings Delta submitted in connection with the instant matter, Delta stated that both Sony Ericcson and Delta "asked the Swedish Arbitral Tribunal to make an initial finding on jurisdiction." (See Delta's Opp., filed April 6, 2009, at 4:8.) Delta thus appears to have conceded it agreed to submit the issue of arbitrability to the tribunal. See First Options, 514 U.S. at 944 (holding where "parties objectively revealed an intent to submit the arbitrability issue to arbitration," district court does not independently review issue).

included in the GPC.[6]  "As a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning."  J. S. & H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212, 215 (5th Cir. 1973;) cf., e.g., Chan v. Drexel Burnham Lambert, Inc., 178 Cal. App. 3d 632, 643-45 (1986) (holding arbitration provision not properly incorporated by inference where contract did not "identify any document or source [in which arbitration provision was included] by title").[7]  Here, the Price Agreement clearly stated that the terms and conditions of the GPC "shall apply" to the Price Agreement.  Although Delta argues that Sony Ericsson failed to provide Delta with a copy of the GPC, Delta offers no evidence to support such a finding, nor does Delta contend the GPC, even if it was not provided by Sony Ericsson, was not readily available to Delta had it chosen to review the GPC before it signed an agreement that clearly incorporated the terms and conditions of the GPC therein.  Moreover, Delta fails to cite any authority for the proposition that if a party signs a contract that clearly provides for incorporation of the terms and conditions of another document, the signing party's failure to request such document will in some way serve to negate such incorporation, particularly where, as here, the signing party appears to be highly sophisticated in the realm of

---

[6] Before the tribunal, Delta also argued that, assuming the Price Agreement included an arbitration provision, Sony Ericsson's claims, or certain of them, did not fall within the scope of the arbitration provision.  On that point, Delta prevailed, at least in part (see Steen Affirmation Ex. 2 at 25), and to the extent Delta may not have prevailed, Delta has not, in opposing the instant application, argued the tribunal erred.  Further, before the tribunal, Delta, in addressing the merits of Sony Ericsson's claims under Swedish law, argued that Sony Ericcson "mismanaged [the] recall process," "contributed to the defects [at issue]," and "failed to mitigate costs."  (See Krootdaecha Affirmation Ex. 3, last unnumbered page.)  To the extent Delta did not prevail on said defenses, or other defenses it raised before the tribunal as going to the merits of Sony Ericsson's claims, Delta has not, in opposing the instant application, argued the tribunal erred.

[7] As noted, the tribunal resolved the arbitration issue by applying Swedish law.  In the context of a petition to confirm an award under the Convention, the issue of whether an agreement to arbitrate exists is decided under "American federal arbitration law."  See Sarhank Group, 404 F.3d at 662-63 (directing district court "to find as a fact whether [respondent] agreed to arbitrate . . . on [a] basis recognized by American contract law or the law of agency").  The Court notes, however, that neither party has identified any difference between "American federal arbitration law" and Swedish law on the issue of whether a document has been properly incorporated by reference into a contract.

8

international business.[8]

Accordingly, the Court finds Sony Ericsson has established the probable validity of its claim for confirmation of the Award.

### c. Purpose of Attachment

Sony Ericsson's counsel has declared the attachment is not sought for a purpose other than recovery on the Award. (See Appl., filed March 26, 2009, ¶ 4.) There is no evidence to the contrary.

According, the Court finds the attachment is not sought for a purpose other the recovery on the claim upon which the attachment is based, specifically, Sony Ericsson's petition to confirm the Award.

### d. Amount To Be Secured

The Court finds, and Delta does not argue to the contrary, that the amount to be secured, were an attachment to issue, would be greater than zero. Delta does argues, however, that the amount Sony Ericsson seeks to secure, specifically, $4,287,555.93, is more than the amount of the Award.

The tribunal awarded Sony Ericsson damages in the amount of $2,416,060.40. Additionally, because Sony Ericsson had paid the arbitration costs and taxes due on the arbitrators' fees, the tribunal ordered Delta to reimburse Sony Ericsson for half of said costs, specifically, $180,253.25. The tribunal further ordered Delta to pay interest, at a specified rate, until such time as Delta paid the award; Sony Ericsson has calculated the interest due, as of February 3, 2009, to be $966,424.16. These amounts ($2,416,060.40 + $180,253.25 + $966,424.16) total $3,562,737.81.

In addition, Sony Ericsson seeks to secure $724,818.12, which amount, according to Sony Ericsson, represents "three years' interest at 10% per annum." (See Sony

---

[8]The tribunal found that Delta is "the world's largest provider of switching power supplies" (see Steen Affirmation Ex. 2 at 12), that Delta was "accustomed to international trade where it is customary to resolve disputes by arbitration" (see id. Ex. 2 at 20-21), and that Sony Ericsson and Delta had "subjected their prior course of dealings to a similar arbitration clause (see id. Ex. 2 at 20). Delta does not, at least for purposes of the instant application, disagree with any of those factual findings.

9

Ericsson's Mem. of P. & A., filed March 26, 2009, at 8:20.) According to Sony Ericsson, said additional sum corresponds to "interest and costs that may accrue on the [A]ward" for the next three years, a period of time Sony Ericsson apparently assumes will elapse before a final decision on appeal is rendered. (See id. at 8:9-11.) Under California law, however, an attachment is a "prejudgment remedy" by which a debtor's assets can be "seized and held until final adjudication at trial." See Lorber Industries v. Turbulence, Inc., 175 Cal. App. 3d 532, 535 (1986) (emphasis added).

Accordingly, the Court declines to order the seizure of property to secure an amount that corresponds to interest and costs that may accrue after entry of judgment;[9] the Court does, however, find the amount to be secured is $3,562,737.81, as Delta has identified no offset or other reduction to which Delta would be entitled. See, e.g., Cal. Code Civ. Proc. § 483.015(b)(1) (providing amount to be secured by attachment must be reduced by amount of judgment in favor of defendant and against plaintiff that remains unsatisfied and is enforceable).

**2. Issuance of Writ of Attachment**

Where, as here, it is appropriate to issue a right to attach order, a court must order issuance of a writ of attachment if the respondent "has failed to prove that all of the property sought to be attached is exempt from attachment" and if the petitioner has filed an undertaking. See Cal. Code Civ. Proc. § 484.090(b).

In opposition to the instant application, Delta does not argue the property at issue, money on deposit with a banking institution, is exempt from attachment. Thus, issuance of a writ of attachment is appropriate upon the filing of an undertaking.

On March 26, 2009, Sony Ericsson filed an undertaking in the amount of $10,000. Delta argues the undertaking should be increased to $350,000 for the reason that a writ of

---

[9]If judgment ultimately is entered in favor of Sony Ericsson, and Delta were to appeal and object to execution of the judgment pending appeal, Sony Ericsson would be entitled to any protections provided by federal law at that stage of the proceedings. See, e.g., Fed. R. Civ. P. 62(d) (providing for stay of judgment upon court approval of supersedeas bond).

10

attachment will "interfere[ ] with Delta's business operations" and that Delta will be incurring attorney's fees in the instant action. (See Delta's Opp., filed March 31, 2009, at 6.) The purpose of an undertaking is to compensate Delta for the loss of its property in the event the attachment is later found to be wrongful. See Cal. Code Civ. Proc. § 489.210. Given that Sony Ericsson seeks to attach funds in an amount substantially in excess of three million dollars, it is not unreasonable to predict that Delta's losses, in the event the attachment is later determined to be wrongful, could equal or exceed $350,000.

Accordingly, the Court finds an undertaking in the total amount of $350,000 is appropriate.

As further set forth below, Sony Ericsson will be directed to submit proof of such undertaking, as well as a proposed writ of attachment, within three court days of the date of the filing of the instant order.[10]

**C. Temporary Restraining Order**

By order filed April 8, 2009, the Court temporarily restrained certain garnishees from distributing or otherwise transferring the sum of $4,287,555.93 held by those garnishees for the benefit of Delta, pending the Court's ruling on Sony Ericsson's application for a writ of attachment. By the instant order, the Court has conditionally granted Sony Ericsson's application, and will issue a writ of attachment for $3,562,737.81 in funds held for the benefit of Delta by one garnishee, specifically, Citibank N.A., pending Sony Ericsson's filing of an undertaking in the total amount of $350,000 and submission of a proposed writ.

Accordingly, the Court, by separate order filed concurrently herewith, will modify the temporary restraining order, filed April 8, 2009, to provide that the garnishees are restrained from distributing or otherwise transferring the sum of $3,562,737.81, pending issuance by the Court of a writ of attachment and service thereof by Sony.

---

[10] The proposed writ submitted by Sony Ericsson to the Clerk on March 26, 2009, is not sufficient because (1) said submission, although referring to specific bank accounts, also includes a vague reference to "any other property of defendant" without identification thereof, and (2) the amount of property to be attached, as well as the undertaking, differ from the amounts determined to be appropriate herein.

11

**CONCLUSION**

For the reasons stated above, Sony Ericsson's application for a writ of attachment is hereby GRANTED, conditioned upon Sony Ericsson's posting, no later than three court days from the filing of the instant order, an undertaking in the amount of $350,000 and submitting within such time period a proposed writ of attachment in conformity with the above findings.

**IT IS SO ORDERED.**

Dated: April 15, 2009

MAXINE M. CHESNEY
United States District Judge